IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS RASHEED, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY COLLEGES OF CHICAGO, | ) | |
| | ) | **Jury Trial Requested** |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, THOMAS RASHEED ("Plaintiff"), by and through his attorney, Kevin Vodak, of Council on American Islamic Relations, Chicago Chapter (CAIR-Chicago), complaining of Defendant, CITY COLLEGES OF CHICAGO ("Defendant"), states as follows:

## NATURE OF THE CASE

1. Plaintiff seeks redress for the violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, as a result of religious discrimination that he suffered when Defendant terminated his employment.

## JURISDICTION AND VENUE

2. Plaintiff alleges violations of his civil rights under Title VII of the Civil Rights Act of 1964; therefore, jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331.

3. On January 10, 2011, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*See* Ex. A – Charge of Discrimination.)

4. The EEOC issued a Notice of Right to Sue on Plaintiff's charge on September 28, 2012, which was received on October 1, 2012. (*See* Ex. B – Notice of Right to Sue.)

5. The violations alleged herein occurred in the Northern District of Illinois; therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

6. Plaintiff, THOMAS RASHEED, is an African American Muslim man who currently resides in Illinois.

7. Defendant, CITY COLLEGE OF CHICAGO, is a community college district formed under and governed by the Illinois Public Community Colleges Act, 110 ILCS 805/1-1 *et seq*. Defendant is an employer for the purposes of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), as Defendant employed fifteen (15) or more employees for each working day for twenty (20) or more calendar weeks in the current and preceding calendar years.

## TITLE VII – RELIGIOUS DISCRIMINATION

8. Plaintiff reasserts and realleges paragraphs one (1) through seven (7) as if set forth fully herein.

9. In January 2008, Plaintiff was hired by Defendant as an Instructor and Coordinator of the Visual Media Communications Department at Kennedy-King College ("KKC"), a position which he held until December 11, 2010. This position involved teaching Visual Media Communications courses such as graphic design, supervising adjunct faculty in the department, and updated the curriculum with website and animation courses.

10. Prior to being employed by Defendant, Plaintiff had twenty (20) years of teaching experience, primarily in graphic design and visual communication.

11. Throughout his tenure at Defendant, Plaintiff consistently received favorable student evaluations, as well as strong letters of recommendation from former KKC President Clyde El-Amin, former Vice President of Academic Affairs Jacquie Hood Martin ("Vice

President Hood Martin"), and the Faculty Council. Plaintiff invested countless hours serving the KKC community by teaching and advising students as well as designing several covers of the KKC schedule of classes, the Visual Communications' programs website, program brochures, the Visual & Media Communications logo & T-shirt, theater poster design, and the Visual Communications annual student awards program. Plaintiff was also able to increase student enrollment in the Visual Communications program from fifty (50) in Spring 2008 to one hundred fifty (150) in Spring 2010.

12. On July 18, 2010, Plaintiff submitted his application packet for tenure review and third year contract renewal to KKC President John Dozier ("President Dozier"). This application packet contained extensive materials demonstrating that he met all of the requirements for tenure as outlined in Defendant's Contract Renewal/Tenure Manual, i.e., teaching effectiveness, involvement in college activities and responsibilities, and professional growth.

13. Defendant advised Plaintiff on October 14, 2010 that his application for tenure was denied and that his contract with Kennedy King College would not be renewed for Spring 2011.

14. Approximately one (1) week prior to being advised of Defendant's decision, Plaintiff received a memorandum from President Dozier to Provost Angela Henderson dated August 17, 2010, which stated that Dozier was recommending that Plaintiff be denied tenure with Defendant. This memorandum contended the following:

> While Mr. Rasheed posses [sic] a vast knowledge in the area of Visual Communications, there are several aspects of his academic and professional demeanor that are of concern. Dr. Rosemary Jackson served as Mr. Rasheed's immediate supervisor for the past year and has shared with me some of the challenges she faced in terms of Mr. Rasheed's unwillingness to respond to directives. There have been instances where Mr. Rasheed has been less than responsive to the needs of his students, failing to resolve issues regarding grading and awarding of earned certificates. Students have complained that Mr. Rasheed

3

is often late to class, and on occasion has relegated his class time to a laboratory assistant who is not approved to teach.

15. The deficiencies expressed in President Dozier's memorandum were false and pretextual for discrimination, as shown, *inter alia*, by the facts set forth below.

16. During the time period that Plaintiff reported to Dr. Rosemarie Jackson ("Dr. Jackson"), former Vice President of Media and Communications, in the 2009-2010 academic year, Dr. Jackson never issued Plaintiff a written performance evaluation. As a result, Plaintiff was compelled to solicit the assistance of his former supervisor, Vice President Hood Martin, to obtain formal evaluations for his tenure portfolio, all of which confirmed that Plaintiff's academic and professional demeanor were excellent. Hood Martin's evaluation also noted that Plaintiff was a "great motivator for students."

17. Subsequent to being denied tenure, Plaintiff learned that Dr. Jackson submitted two (2) written evaluations in his tenure portfolio with his signature on the last page of these evaluations. Plaintiff, however, only signed evaluations drafted by Vice President Hood Martin, and thus Dr. Jackson misappropriated his signature on evaluations that she conducted.

18. The two (2) written evaluations submitted by Dr. Jackson in Plaintiff's tenure portfolio were actually consistent with Vice President Hood Martin's assessment that Plaintiff's teaching performance was excellent, and these evaluations contradicted the assertions in President Dozier's August 17, 2010 memorandum regarding Plaintiff's purported deficiencies.

19. Student evaluations conducted during the 2009-2010 academic year contradict Defendant's assertions regarding Plaintiff's performance, as they fail to reflect any concerns regarding excessive tardiness or lack of responsiveness by Plaintiff.

20. With respect to the laboratory assistant, Plaintiff was unaware of this individual performing any teaching duties, as he was only a resource for students who had technical

4

computer problems. Plaintiff never relegated any class responsibilities to this assistant.

21. During the Summer 2010 break, Plaintiff was not teaching and therefore had no responsibility to advise students during this time period, pursuant to the Collective Bargaining Agreement in place between Defendant and the union who represented teachers at KKC. An email from Vice President Hood Martin also advised faculty that they were not required to advise students during the summer months in which they did not have a teaching contract, directing the faculty to have administrators address students' requests for assistance.

22. On information and belief, Dr. Jackson treated Plaintiff less favorably than non-Muslim faculty by attempting to mandate that Plaintiff address a student issue during Summer break, when she has not imposed such mandates on other faculty members.

23. In July 2010, Plaintiff was advised that one of his students required program certificates for his program. Despite Plaintiff's attempts to have administrators at KKC address this issue, they failed to do so, and Plaintiff learned in September 2010 that Dr. Jackson accused him of failing to assist the student. KKC contended that the student presented an official complaint against Plaintiff for this issue, when in fact the student confirmed in writing to Plaintiff that he never made any such complaint.

24. Both President Dozier and Dr. Jackson (both of whom are Christian) were aware that Plaintiff is a faithful Muslim at the time that they made their recommendations to deny him tenure at Defendant, as indicated by their knowledge of Plaintiff observing Muslim holidays.

25. At a program celebrating religious traditions in Spring 2010, President Dozier observed Plaintiff express his religious beliefs, wear a kufi (head covering), and recite Arabic from the Koran. During this program, President Dozier exhibited discomfort with the Muslim practices which were displayed by Plaintiff and two (2) other Muslim staff members (who were

not teachers).

26. On information and belief, Plaintiff was one (1) of the two (2) Muslim faculty members employed at KKC during the 2009-2010 academic year. In addition to Plaintiff, President Dozier terminated the employment of the other Muslim faculty member, who had been employed by Defendant for approximately seven (7) years. On information and belief, the termination of this other Muslim faculty member was based on pretextual reasons.

27. On information and belief, Defendant granted tenure to similarly situated instructors at KKC as well as other City Colleges, whose contributions were equal to or less than Plaintiff's efforts, and thus Defendant treated Plaintiff less favorably than comparable non-Muslim instructors.

28. The reasons given for denying Plaintiff tenure and not renewing his contract were pretextual, based on, *inter alia*, Defendant citing unsubstantiated and false allegations from Dr. Jackson, who had previously refused to properly assess his performance or conduct evaluations for his tenure portfolio, President Dozier's recommendation purportedly relying solely on Dr. Jackson's false allegations, and Plaintiff's tenure portfolio contradicting the assertions expressed by President Dozier for not granting tenure to Plaintiff or renewing his contract.

29. In October 2010, Plaintiff's attempted to address the discriminatory decision denying him tenure and not renewing his contract by appealing the decision to Defendant's Chief of Staff and Chancellor, to no avail.

30. Defendant replaced Plaintiff's position with a non-Muslim teacher whose qualifications were well below Plaintiff's experience, as this individual only had three (3) years of teaching experience and had previously reported to Plaintiff in the Visual Communications Department.

31. On information and belief, in Fall 2010, Defendant demoted Dr. Jackson from her Vice President position to an adjunct faculty member based on her poor job performance.

32. In February 2011, Defendant mandated all City College presidents to reapply for their positions based on substantial improvements in the specific performance measures and goals being implemented for the president positions. President Dozier elected not to reapply for his position in 2011.

33. The aforementioned conduct of Defendant was willful and malicious acts of unlawful discrimination against Plaintiff because of his religion, Islam, in violation of the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.

34. As a direct and proximate result of Defendant's actions, Plaintiff has suffered emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, THOMAS RASHEED, requests that this Honorable Court enter judgment in his favor and against Defendant, CITY COLLEGES OF CHICAGO, and enter an Order awarding the following relief:

A. All wages and benefits he would have received but for the discrimination;

B. Compensatory damages;

C. An order mandating that Defendant reinstate Plaintiff, or front pay in lieu of reinstatement;

D. An award of costs, as provided by F.R.C.P. 54(d)(1);

E. An award of reasonable attorneys fees, as provided by 42 U.S.C. § 2000e-5(k); or 42 U.S.C. § 1988(b); and

F. Such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

35. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

                                                          Respectfully submitted,
                                                          THOMAS RASHEED, Plaintiff,


By: /s/Kevin Vodak_____
      KEVIN VODAK
      Attorney for Plaintiff


Attorney #: 6270773
Council on American-Islamic Relations,
Chicago Chapter (CAIR-Chicago)
28 East Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Ph:    312.212.1520
Fax:   312.212.1530