IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS RASHEED, | ) |
| Plaintiff, | ) |
| v. | ) 12 C 9382 |
| BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT 508, d/b/a CITY COLLEGES OF CHICAGO, | ) Judge Virginia M. Kendall |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas Rasheed filed a complaint against Defendant Board of Trustees of Community College District No. 508 (the "Board") alleging a violation of Title VII of the Civil Rights Acts of 1964. Specifically, Rasheed alleges that the Board refused to grant him tenure and terminated his employment because of his religion. The Board, which claims that Rasheed cannot show that religious discrimination contributed to the denial of tenure or termination, moves for summary judgment. The Board also claims that it denied Rasheed tenure because Rasheed behaved inappropriately toward colleagues, repeatedly used a laboratory assistant as a substitute teacher, and failed to respond to student issues. The Board claims that these are legitimate, non-discriminatory reasons for denying Rasheed tenure. For the reasons stated herein, this Court denies the Board's motion.

## FACTS

The following facts are undisputed unless otherwise noted.

### A. Rasheed's Employment

In January 2008, Kennedy-King College, one of several community colleges operated by the Board, hired Rasheed as a full-time faculty member in the Graphic Arts Department. (Dkt. No. 54 at ¶ 4.) Prior to working at Kennedy-King, Rasheed obtained more than twenty years of experience in the field of graphic design and visual arts. (Dkt. No. 60 at ¶ 81.) During this time, he worked for publishing companies, ran his own studio in Chicago for eight years, and worked at a studio with Leo Burnett Advertising. (*Id.*) He also taught art in a private school in Chicago, at a public school in Harvey, Illinois, as an adjunct instructor at Columbia College Chicago, and as a tenured professor at Florida A&M University. (*Id.* at ¶ 81.)

At Kennedy-King, Rasheed created a new curriculum that included eleven classes approved by the District Office, implemented marketing plans for Kennedy-King with an award program that showcased student work, and developed a website for the program. (*Id.* at ¶ 87.) The parties dispute whether Rasheed increased enrollment in the program from twenty students to one hundred fifty students. (*Id.*) Former Kennedy-King president Clyde El-Amin wrote a letter of recommendation stating that Rasheed "led the effort to redesign the curriculum" and used "innovative student-centered, industry relevant approaches" in the classroom. (*Id.* at ¶ 88.) Rasheed received both positive and negative comments on his student evaluations at Kennedy-King, and his average ratings exceeded 3 out of 5 possible points. (Dkt. No. 54, ¶ 34; Dkt. No. 60, ¶ 109.)

Rasheed initially reported to Dean of Career Programs Jacqueline Hood Martin. (Dkt. No. 54 at ¶ 5.) That changed in August 2009, when John Dozier became interim president of Kennedy-King and Martin became interim vice president of academic affairs. (*Id.* at ¶ 13.) Some

2

time in 2009, the Graphic Arts Department, now called the Visual Communications Department, moved to the Educational Media and Distance Learning Division ("EDML Division"). (*Id.* at ¶ 6, 15.) Rosemary Jackson was the vice president of the EDML division at the time. (*Id.* at ¶ 15.) The Visual Communications Department fell under the umbrella of the Media Communications Department, directed by Kiana Battle. (*Id.* at ¶ 14, 15.) The parties dispute whether Rasheed reported to Kimberly Chavis, dean of career programs, or Jackson. (Dkt. No. 54 at ¶ 13, 16; Dkt. No. 60 at ¶ 84.) The parties dispute whether Rasheed continued his reporting relationship with Martin regarding his tenure portfolio and some other matters. (Dkt. No. 60 at ¶ 82.)

### B. Tenure Policy

Tenure-track faculty members at the community colleges operated by the Board must apply to have their contracts renewed each academic year. (Dkt. No. 54 at ¶ 7.) Faculty members who have their contracts renewed for a fourth year become tenured upon completing three full academic years of employment. (*Id.* at ¶ 7.) To apply for contract renewal and ultimately tenure, faculty members must submit a detailed portfolio and demonstrate that they have met certain minimum criteria in areas such as teaching effectiveness, involvement in college activities and responsibilities, and professional growth. (*Id.* at ¶ 8.) Dozier testified that collegiality, the ability to get along with colleagues, was another critical factor when determining whether to grant tenure. (*Id.* at ¶ 12.) Rasheed notes that collegiality is not an explicit requirement for tenure under the Board's tenure policy. (*Id.*) Pursuant to the Board's academic policies, all non-tenured faculty members were to be evaluated each semester, with input from peers, department chairs, students, and administration. (Dkt. No. 60 at ¶ 95.) At Kennedy-King, the vice president of academic affairs and then the president review contract renewal and tenure applications, the president then makes a recommendation to the provost. (Dkt. No. 54 at ¶ 9.) The Board must approve all contract renewals and tenure applications. (*Id.* at ¶ 10.)

### C. Alleged Religious Discrimination

On December 21, 2009, the EMDL Division hosted a luncheon where employees could highlight their holiday traditions. (Dkt. No. 60 at ¶ 90.) Jackson asked Rasheed to give a presentation about his Islamic faith during the luncheon; Rasheed agreed, and wore traditional Islamic garb, read from the Koran in Arabic, and discussed how Islam and Christianity had many things in common. (*Id.* at ¶ 91, 94.) Rasheed claims that following the presentation Dozier was "uncomfortable" with him and refused to make eye contact or speak to him, which was inconsistent with their previous interactions. (Dkt. No. 54 at ¶ 91.) He also claims that Dozier stopped his prior practice of asking Rasheed to perform special assignments even though Rasheed had always performed such assignments satisfactorily. (*Id.* at ¶ 91, 92.) According to Rasheed, "things got strange" after the luncheon with Jackson, Battle, and Chavis too as Rasheed experienced a "negative change in manner" from them. (*Id.* at ¶ 94.) The Board denies that Dozier displayed any sign of being uncomfortable, that Rasheed had done a "suitable job" on previous special assignments, and that Dozier stopped giving Rasheed special assignments after the luncheon. (Dkt. No. 60 at ¶ 91, 92.) The Board also denies any negative change in manner from Jackson, Battle, or Chavis. (*Id.*, ¶ 94.)

### D. Concerns About Rasheed's Performance

Rasheed was occasionally tardy to class during the 2009-2010 school year. (Dkt. No. 54 at ¶¶ 34-36.) The parties dispute how often Rasheed was tardy, how tardy he had been, and whether Jackson or anyone else ever formally notified Rasheed that his tardiness was a problem. (*Id.*) Rasheed frequently turned his certificates of attendance in late, but he disputes that he was the person responsible for their untimeliness. (*Id.* at ¶ 46.) On October 8, 2009, Rasheed took a personal day and Jackson sent him an email admonishing him for taking personal days on days he had to teach and for allowing his teaching assistant, Maxwell Amoah, to "fill in" for him. (*Id.*

at ¶¶ 37-38.) On three subsequent occasions, Rasheed took a personal day and notified a supervisor that Amoah would cover his classes. (*Id.* at ¶¶ 37, 40, 42, 43.) The parties dispute whether Amoah was qualified to teach or supervise the students in Rasheed's absence during the 2009-2010 school year. (*Id.* at ¶ 39.) Rasheed disputes that he directed Amoah to act outside the scope of his qualifications in Rasheed's absence. (*Id.* at ¶ 40.)

On July 27, 2010, Rasheed attended an EDML Division meeting with Jackson, Battle, Dozier, and others. (*Id.* at ¶ 23.) The parties dispute whether Rasheed was "rude" and "disrespectful" or merely "passionate" at the meeting. (*Id.* at ¶ 24.) On August 12, 2010, Jackson and Rasheed had a conversation in a hallway. (*Id.* at ¶ 26.) The parties dispute whether Rasheed used an appropriate tone of voice. (*Id.* at ¶ 26.) On August 18, 2010, Battle and Rasheed scheduled a meeting. (*Id.* at ¶ 27.) Rasheed showed up with a union representative, which he believed to be his right under the collective bargaining agreement that governed his employment. (*Id.* at ¶¶ 30, 102.) Battle canceled the meeting. (*Id.* at ¶ 30.) Rasheed believes she canceled the meeting because he brought his union representative. (*Id.* at ¶ 30.) The Board alleges Director Battle canceled the meeting because Rasheed was hostile and disrespectful, and disputes whether Rasheed was allowed to have a union representative present at the meeting. (*Id.* at ¶¶ 31-32.) On September 8, 2010, Rasheed attended another EDML Division meeting and the parties dispute whether Rasheed used an unprofessional tone with Dozier during the meeting. (*Id.* at ¶ 33.)

Toward the end of the Spring 2010 semester, or just after it ended, one of Rasheed's students told Battle that he needed certain certificates he earned for coursework in the Visual Communications program to get a job. (*Id.* at ¶ 52.) Rasheed was not on campus during that time. (Dkt. No. 60 at ¶ 110.) The parties dispute whether Rasheed agreed to assist or meet with the student over the summer. (*Id.* at ¶ 110.) The parties also dispute whether Rasheed was

responsible for preparing the student's certificates and whether someone else at Kennedy-King could have prepared them. (*Id.* at ¶¶ 111, 112.)

E. **Denial of Tenure**

Around August 10, 2010, Rasheed submitted his tenure portfolio to Martin, who submitted it to Dozier with a recommendation that Rasheed receive tenure. (Dkt. No. 54 at ¶ 64.) In addition to the tenure portfolio, Dozier relied on the recommendations of vice presidents, deans, and the faculty member's direct supervisors when determining whether to recommend a faculty member for tenure. (*Id.* at ¶ 66.) Dozier requested a supplementary memo from Chavis, who then requested a memorandum from Jackson. (Dkt. No. 60, ¶ 117.) Jackson submitted a memorandum outlining the reasons why she would not recommend Rasheed for tenure. (*Id.*) After reviewing Jackson's memo, Dozier combined its contents with his limited personal interactions and other information he had received about Rasheed to conclude that he would not recommend Rasheed for tenure. (Dkt. No. 54 at ¶ 71.) There is a dispute as to whether President Dozier's consideration of the memo violated Kennedy-King's progressive disciplinary policy. (Dkt. No. 60 at ¶ 97.) But the Board admits that Kennedy-King never disciplined Rasheed at any point during his employment at Kennedy-King. (*Id.*) Dozier submitted a formal memo to the Board recommending against tenure for Rasheed and, on October 14, 2010, and the Board voted not to renew Rasheed's contract when it expired in December 2010. (Dkt. No. 54 at ¶ 73.)

**STANDARD OF REVIEW**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S Ct. 2548, 91 L. Ed.2d 265 (1986)). "To

survive a motion for summary judgment, 'the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in [his or] her favor.' " *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013) (quoting *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012)). Courts do not weigh the evidence or make credibility determinations when deciding motions for summary judgment. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011). Rather, courts view all facts and draw all reasonable inferences in the non-moving party's favor, and determine whether there is a genuine issue of triable fact. *See Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). Whether a fact is material depends on the underlying substantive law that governs the dispute, and a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted).

## **DISCUSSION**

Rasheed alleges that the Board denied him tenure and terminated his employment because of his religious beliefs. Title VII prohibits employers from discriminating based on religion. 42 U.S.C. § 2000e-2(a)(1). The primary question at this point in the case is whether a reasonable jury could infer prohibited discrimination from the evidence presented by the parties. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013). One may prove employment discrimination directly or indirectly. *Id.*

In its opening brief, the Board claims that Rasheed must proceed under the indirect method because "Rasheed admits that he has no direct evidence of a discriminatory motive." (Dkt. No. 52 at 10.) The Board bases this statement on Rasheed's admission that he is not aware of any statements made indicating a bias against Muslims. (*Id.*; *see also* Dkt. No. 54 at ¶ 74.) But the Board's view of the direct method is too narrow; the direct method allows Rasheed to present direct or circumstantial evidence that his employer had a discriminatory motivation. *See*

7

*Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013). The Board did not argue in its opening brief that Rasheed cannot show a discriminatory motivation based on circumstantial evidence. Because the Board did not make this argument in its opening brief, it cannot do so for the first time in its reply brief. *See United States v. Wescott*, 576 F.3d 347, 354 (7th Cir. 2009) ("Arguments raised for the first time in a reply brief are waived.") (citing *Porco v. Trustees of Indiana Univ.*, 453 F.3d 390, 395 (7th Cir. 2006)).

Even if the Board had not waived the argument, whether circumstantial evidence shows that the Board had a discriminatory motivation is a question for the jury. Circumstantial evidence of employment discrimination typically consists of: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). Here, Rasheed claims that the reasons the Board denied him tenure are after-the-fact justifications that serve as a pretext for discrimination. Specifically, Rasheed presented evidence, to include Martin's recommendation, that he met the minimum criteria for tenure in areas such as teaching effectiveness, involvement in college activities and responsibilities, and professional growth. Rasheed also presented evidence that he had never been disciplined for any of the behavior the Board relied on to deny him tenure. This Court understands the "interest of colleges and universities in institutional autonomy." *See Blasdel v. Northwestern University*, 687 F.3d 813, 816 (7th Cir. 2012). Particularly with respect to tenure, which not only entails a significant commitment by the college or university but also may implicate "office politics and professional jealousy." *See id.* at 817.

Yet this Court must allow the jury to determine whether the reasons the Board relied on to justify denying Rasheed tenure were legitimate or pretextual. On one hand, Dozier's belief that collegiality is critical and the Board's reliance on unresolved student issues, leaving an assistant in charge of his class, circumventing authority, and his behavior towards other Kennedy-King employees may have been valid reasons to deny Rasheed tenure. On the other hand, given Kennedy-King's failure to formally discipline Rasheed for any of these reasons and Rasheed's testimony about Dozier's, Jackson's, Battle's, and Chavis's behavior following the holiday luncheon, one could infer that those involved in Rasheed's tenure decision looked for reasons to justify a decision motivated by discrimination. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) ("At this stage, we must credit the plaintiffs' account. And in any event, this potentially after-the-fact justification could be merely a pretext for discrimination. The jury is the appropriate body to resolve these credibility disputes.") (citation omitted). Therefore, this Court denies the Board's motion for summary judgment.

The indirect method requires that Rasheed show that: (1) he is a member of a protected class; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside of the protected class more favorably. *Perez*, 731 F.3d at 704. Rasheed concedes that the "evidence elicited during discovery was not strong enough for [him] to show that similarly situated faculty members were treated more favorably than him." (Dkt. No. 53 at 13 n.3.) This forecloses use of the indirect method to prove discrimination.

## CONCLUSION

For the reasons stated herein, this Court denies the Board's motion for summary judgment.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 22, 2014